**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| PARAMEDICS PLUS, LLC § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | |
| § | CIVIL ACTION NO. 4:18-cv-197 |
| § | |
| EMERGENCY MEDICAL SERVICES § | JURY TRIAL REQUESTED |
| AUTHORITY, and § | |
| HERBERT STEPHEN WILLIAMSON, § | |
| § | |
| Defendants. § | |

**ORIGINAL COMPLAINT OR IN THE ALTERNATIVE**
**CROSSCLAIM IN CIVIL ACTION NO. 4:14-CV-203**

Paramedics Plus, LLC, makes the following complaint against defendants, the Emergency Medical Services Authority and H. Stephen Williamson, as follows:

**PARTIES**

1.  Emergency Medical Services Authority ("EMSA") is an Oklahoma public trust with its principal place of business in Tulsa, Oklahoma.

2.  Paramedics Plus, LLC ("Paramedics Plus") is a Texas Limited Liability Company with its principal place of business in Tyler, Texas. The sole member of Paramedics Plus is East Texas Medical Center Regional Health Services, Inc., a Texas corporation.

3.  EMSA is the exclusive provider of ambulance services to residents in Oklahoma City, Tulsa and other municipalities in Oklahoma.

4.  H. Stephen Williamson is an individual residing in Tulsa, Oklahoma. Williamson was, for many years prior to October 17, 2017, the President and Chief Executive Officer of EMSA.

## JURISDICTION AND VENUE

5.      The amount of damages suffered by Paramedics Plus, exclusive of interest and costs, exceeds $75,000.00. The jurisdiction of this Court is based upon diversity of citizenship in accordance with 28 U.S.C. § 1332. As a result of the complete diversity of the parties' citizenship, diversity jurisdiction lies. This Court also has jurisdiction in accordance with 28 U.S.C. § 2201.

6.      Moreover, this Court has original jurisdiction over this matter in accordance with 28 U.S.C. § 1345, and thus supplemental jurisdiction over these claims in accordance with 28 U.S.C. § 1367(a).

7.      Venue is proper in this judicial district in accordance with 28 U.S.C. § 1391.

## BACKGROUND FACTS

8.      The EMSA emergency medical services ("EMS") system is based upon the Public Utility Model ("PUM"), which has three components: (1) the ambulance authority (i.e., EMSA); (2) the Medical Control Board; and (3) the contractor.

*EMSA*

9.      EMSA is responsible for providing ambulance transports to all residence in its service area. EMSA is licensed by the State of Oklahoma to provide ambulance services. EMSA bills patients, insurance companies, and federal health care programs, such as Medicare and Medicaid, for its ambulance services. Because receipts from these sources are not sufficient to cover EMSA's operating expenses, EMSA requires funding in the form of subsidies from Tulsa and Oklahoma City. EMSA is governed by a Board of Trustees, the volunteer members of which are selected by the municipalities that EMSA serves.

10. Under the contract between Paramedics Plus and EMSA, EMSA owned the equipment used in providing the ambulance services, including, for example, the ambulances themselves, the medical equipment on board the ambulances, and the radio equipment used on the ambulances. EMSA also owned the computer systems and other hardware associated with its ambulance operations. In addition, EMSA owned the infrastructure associated with the ambulance system, including office space in Oklahoma City and Tulsa.

11. Under the EMSA PUM, ambulance transports are provided under EMSA's trade name. For example, when Paramedics Plus served as EMSA s contractor, EMSA's name alone appeared on all of the ambulances, and all of the paramedics, EMTs and other personnel (whether employed by EMSA or Paramedics Plus) wore EMSA uniforms. In fact, employees of Paramedics Plus even had EMSA.net email addresses and EMSA business cards. As a result, the general public could not distinguish between EMSA employees and employees of Paramedics Plus.

12. EMSA was also responsible for billing third parties for ambulance transports, including federal health care programs such as Medicare and Medicaid. At all times relevant to this case, EMSA was enrolled with Medicare as an Ambulance Service Supplier and had a National Provider Identifier ("NPI") for purposes of billing federal health care programs. EMSA was also a provider under Oklahoma's Medicaid program and submitted claims to the Oklahoma Health Care Authority for its ambulance services. EMSA submitted all of the Medicare and Medicaid claims at issue in this case.

*The Medical Control Board and Medical Director*

13. The Medical Control Board is an independent board of volunteer physicians who oversee all clinical aspects of the EMS system, including EMSA s ambulance services. The

Medical Control Board establishes the standard of care for the EMS system and appoints the Medical Director, who oversees the day-to-day clinical operations of the EMS system.

14. The Medical Director certifies that all ambulances, paramedics, EMTs and other personnel are meeting the EMS system's requirements. The Medical Director also oversees the clinical work of all paramedics and EMTs (collectively, "medics") in the field, and all medics (even those employed by the contractor) operate under the Medical Director's medical license. The Medical Director is also tasked with inspecting ambulances and other equipment to ensure that the equipment meets clinical protocols.

*Paramedics Plus—the Contractor*

15. The last component of the EMSA PUM system is the contractor. Under its contract with EMSA, Paramedics Plus employed, trained and managed the paramedics, EMTs and other personnel who operated EMSA's ambulances under EMSA's name. Paramedics Plus also supplied the disposable goods used on the ambulances. Paramedics Plus was also responsible for ensuring that its EMTs and paramedics met response-time and other clinical standards as defined in its contract with EMSA. Paramedics Plus operated under EMSA's trade name, and its personnel wore EMSA uniforms and worked in EMSA's ambulances.

16. EMSA contracted with Paramedics Plus from November 1, 1998 through October 31, 2013. Under the contract, EMSA paid Paramedics Plus on a per-transport basis, and Paramedics Plus included all transports on a single monthly invoice.33 Paramedics Plus was entitled to payment from EMSA regardless of whether EMSA received payment from Medicare or Medicaid. Paramedics Plus had no responsibility for billing EMSA's patients or third-party payors (including Medicare and Medicaid). In fact, Paramedics Plus was not enrolled as a provider of ambulance services in Oklahoma for purposes of either Medicare or Medicaid.

*Key Contract Terms*

17. As the contractor, Paramedics Plus' relationship with EMSA was governed by a Contract for Services, first dated October 26, 1998 (the "Contract"). A copy of the Contract is attached as Exhibits A1-A2 hereto. The Contract is split into two electronic files A1-A2, to meet the electronic filing size limitations pursuant to Local Rule CV-5(4).

18. Among other provisions, the Contract provided that:

   a. EMSA assumed the responsibility to "[m]onitor compliance with contractual terms;"

   b. EMSA assumed the responsibility to act "in accordance with the standards called for by the Uniform Code for Emergency Medical Services ("Uniform Code") and other regulations;"

   c. EMSA thus also assumed the responsibility to comply with the Uniform Code's provision providing "EMSA shall at all times comply with the terms of: . . . all other applicable laws, rules, and regulations;" and

   d. EMSA assumed the responsibility to "[h]andle all patient billings and collections."

19. In accordance with the above provisions, EMSA exclusively handled all claims to Medicare and Medicaid (and all other billing claims, for that matter), and EMSA paid Paramedics Plus for its services regardless of whether EMSA collected from third parties such as Medicare and Medicaid.

20. On March 26, 2003, EMSA and Paramedics Plus executed a First Modification to the Contract which modified certain contractual provisions and extended the Contract term. It

did not, however, alter EMSA's duties as set forth in Paragraph 17, *supra*. A copy of the First Modification is attached as Exhibit B hereto.

21. Among the modifications set forth in the First Modification was the inclusion of a provision expressly provided that Oklahoma law governed the Contract.

22. In 2005, EMSA, acting through its Chief Executive Officer and authorized agent, H. Stephen Williamson, and Paramedics Plus agreed to an arrangement whereby Paramedics Plus would refund to EMSA profits made by Paramedics Plus under the Contract over a certain, agreed-to amount.

23. Thereafter, Williamson directed, and was otherwise involved in, all payments made under the profit-cap arrangement.

24. The Contract was never amended to include the arrangement described in Paragraph 22*, supra*. This was so despite the fact that the Contract was modified subsequently, as follows:

   a. On October 22, 2008, EMSA and Paramedics Plus executed a Second Modification to the Contract which modified certain contractual provisions and extended the Contract term. A copy of the Second Modification is attached as Exhibit C hereto.

   b. On April 28, 2010, EMSA and Paramedics Plus executed a Third Modification to the Contract which modified certain contractual provisions and extended the Contract term. A copy of the Third Modification is attached as Exhibit D hereto.

   c. On April 12, 2013, EMSA and Paramedics Plus executed a Fourth Modification to the Contract which modified certain contractual provisions and extended the Contract term. A copy of the Fourth Modification is attached as Exhibit E hereto.

25. Upon information and belief, each of the Modifications referenced in Paragraph 22 above were drafted by James Orbison for the law firm of Riggs, Abney, Neal, Turpen, Orbison & Lewis ("Riggs Abney"). Riggs Abney has represented EMSA for since at least 1994 and serves as its *de facto* and/or actual general counsel.

26. Riggs Abney was EMSA's agent as a matter of fact and law as to all acts and omissions it undertook with respect to the Contract, including the drafting of the Modifications thereto.

27. Riggs Abney also provided legal representation to Paramedics Plus under the Contract.

28. Riggs Abney and EMSA owed to Paramedics Plus a duty of ordinary care, as well as an express contractual duty under the Contract, to ensure that the parties' relationship was in compliance with all applicable laws, rules, and regulations.

29. Each of the Modifications referenced in Paragraph 24, *supra*, included the following language:

> No Oral Agreements. THE CONTRACT, AS MODIFIED BY THE SECOND [or THIRD or FOURTH] MODIFICATION, TOGETHER WITH THE RELATED DOCUMENTS, REPRESENTS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

30. This provision was false, and was known by EMSA and Riggs Abney to be false, at the time of the drafting of each of the Modifications referenced in Paragraph 24, *supra*.

31. Paramedics Plus reasonably relied upon EMSA and Riggs Abney (its counsel) in executing the Modifications referenced in Paragraph 24, *supra*.

32.     In May 2012, upon EMSA's request, James Orbison of Riggs Abney, prepared a letter detailing the profit cap agreement (the "Profit Cap Letter") to be printed on Paramedics Plus's letterhead. A copy of the Profit Cap Letter is attached as Exhibit F hereto.

33.     Despite the fact that Mr. Orbison and Riggs Abney had a healthcare compliance attorney in its firm, Mr. Orbison did not seek that attorney's opinion on whether this arrangement was in compliance with all laws as required by the Contract, including the AKS and FCA.

34.     Mr. Orbison sent a draft of the Profit Cap Letter to Mr. Williamson In May 2012, to print on Paramedics Plus letterhead, instead of amending the contract to include the profit cap agreement. Mr. Orbison testified that he made that determination himself.  Later, Mr. Orbison learned that the Profit Cap Letter had not yet been signed and directed that the same draft sent to Williamson earlier to be sent again for signature by Paramedics Plus. Mr. Orbison knew this was done at a time after EMSA had engaged the State Auditors to investigate conflicts of interest at EMSA, but before their investigation had begun.

35.     The Plaintiffs have alleged that the Profit Cap Letter was fraudulent and intended to deceive the Oklahoma State Auditor's office, which was auditing EMSA at the time.

*This Litigation*

36.     In Civil Action No. 4:14-CV-203, relator, Stephen Dean, the United States, and the State of Oklahoma have contended that the above-described profit-cap arrangement violated state and federal law, including but not limited to the False Claims Act, 31 U.S.C. §§ 3729-3733 *et seq*.

37.     Paramedics Plus has been made a defendant in this action, been exposed to substantial potential liabilities, and expended substantial sums in defense and settlement of these allegations.

38.     The Plaintiffs in this action have made clear, including through discovery made for the first time in February 2018, that perhaps the most substantial evidence of the alleged illegality of the profit-cap arrangement was the fact that it was not included in any of the contract amendments after it began.

39.     The profit-cap arrangement was not included in any of the contract amendments after it began only due to the negligence, gross negligence, and intentional misconduct of EMSA and Riggs Abney (its authorized agent).

*The Forced Settlement*

40.     The former parent entities of Paramedics Plus, East Texas Medical Center Regional Healthcare System, Inc. and East Texas Medical Center Regional Health Services, Inc., were set to close on a sale of substantially all of their assets to Ardent Health Partners, LLC ("Ardent") on March 1, 2018.  Due to their financial situation, closing this transaction was an absolute necessity.

41.     On February 26, 2018, the United States obtained an ex parte, pre-judgment writ of sequestration, which required, among other things, that $109,000,000 of the purchase price paid by Ardent was to be sequestered.

Due to the writ of sequestration, the demands of Ardent, and the ETMC entities' financial condition, they were forced to acquiesce to settlement of the claims against them and Paramedics Plus in this action effective as of February 28, 2018.

*EMSA's and Williamson's Indemnity Demands*

42.      During the course of this action, EMSA's counsel, Kristopher E. Koepsel of Riggs Abney, has stated to counsel for Paramedics Plus that EMSA would not seek indemnification from Paramedics Plus under the Contract for this action.

43. Paramedics Plus reasonably relied on these assurances from Mr. Koepsel in not earlier seeking to exercise rights it may have under the Contract's indemnity provision, including assuming and directing EMSA's defense in this matter and any settlement of the claims against EMSA.

44. On February 28, 2018, another lawyer from Riggs Abney, Wm. Gregory James, wrote to counsel for Paramedics Plus and demanded indemnity for all claims, costs, expenses, and attorneys' fees incurred by EMSA in this action. A copy of Mr. James' letter is attached as Exhibit G hereto.

45. On February 28, 2018, counsel for Williamson demanded indemnity for all claims, costs, expenses, and attorneys' fees incurred by EMSA in this action. A copy of Williamson's letter is attached as Exhibit H hereto.

46. On March 6, 2018, Otis Carroll, counsel for Paramedics Plus responded to Mr. James' letter, seeking additional information about EMSA's indemnity demand. A copy of Mr. Carroll's March 6, 2018 letter is attached as Exhibit I hereto.

47. On March 16, 2018, Mr. James responded to the March 6 letter, reaffirming its demand that Paramedics Plus indemnify EMSA fully in this matter. A copy of Mr. James' March 16 letter is attached as Exhibit J hereto.

48. Paramedics Plus denies any indemnity obligation to EMSA in this matter.

49. In fact, Paramedics Plus is itself entitled to implied indemnity from EMSA in this matter as its defense and potential liability in this matter arise solely from the negligence and breaches of contract by EMSA and its duly authorized agent, Riggs Abney.

50. At all times relevant to this action, all attorneys of Riggs Abney (including, specifically, Kristopher E. Koepsel) were acting on behalf of EMSA, as its duly authorized agents. Thus, all of their acts and omissions are attributable to EMSA as a matter of law.

51. At all times relevant to this action, Williamson was acting on behalf of EMSA, as its duly authorized agent. Thus, all of his acts and omissions are attributable to EMSA as a matter of law. Williamson is not a party to the contract and his indemnity claim, if any, is solely derivative of EMSA. Mr. Williamson's claim for indemnity is invalid for the same reasons EMSA's claims are invalid.

## CLAIMS FOR RELIEF

### CLAIM I
### (DECLARATORY JUDGMENT)
### Against EMSA and Williamson

52. Paramedics Plus incorporates by reference the allegations of Paragraphs 1 through 48 as if set forth in Claim I in full.

53. Paramedics Plus states a claim for a declaratory judgment in accordance with 28 U.S.C. § 2201 for the purpose of determining questions of actual, justiciable controversy now existing between the parties.

54. The Contract provides that EMSA is not entitled to indemnity for "claims against *EMSA* arising solely from *EMSA* 's own negligence or intentional misconduct."

55. Further, "Oklahoma has a strong legislative public policy against contracts which attempt to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another." *Satellite Sys., Inc. v. Birch Telecom of Oklahoma, Inc.*, 2002 OK 61, ¶ 11, 51 P.3d 585, 589 (quoting 15 *Okla. Stat.* § 212).

56. The claims at issue in this proceeding arise solely from EMSA's intentional misconduct in its Medicare and Medicaid billing, in which Paramedics Plus had no involvement.

57. The claims at issue in this proceeding also arise from EMSA's, Williamson's and Riggs Abney's negligence and gross negligence in failing to ensure that the profit-cap arrangement was documented in written Modifications to the Contract.

58. EMSA, Williamson, and Riggs Abney owed to Paramedics Plus a duty of ordinary care to ensure that the Contract Modifications were accurate and complete.

59. EMSA, Williamson, and Riggs Abney breached this duty by failing to include the profit-cap provision in any modification to the Contract entered into after the profit cap was agreed to, and in fact expressly stated that there were no oral agreements not contained in the Contract, as modified.

60. It was these breaches that led to this action, rather than any act or omission of Paramedics Plus.

61. Moreover, the claims in this action arise from EMSA's alleged submission of false claims to federal and state governmental authorities, which amounts to fraudulent and intentional misconduct, as described in the plaintiff's and intervenors' filings.

62. EMSA, through Williamson, directed all payments of which the plaintiff and the intervenors complain. EMSA, through Williamson, further directed, and was otherwise involved in, the submission of false claims to federal and state governmental authorities.

63. Indemnification for those kind of claims is contrary to the plain language of the Contract and to Oklahoma public policy.

64. Further, EMSA through its authorized agent, Kristopher E. Koepsel, waived any right it might have otherwise had to indemnity.

65. Moreover, due to Koepsel's representations regarding EMSA's declination of any indemnity right—on which Paramedics Plus reasonably relied—EMSA is estopped from claiming any right of indemnity against Paramedics Plus.

66. In addition, the Contract provides that:

> EMSA shall . . . provide [Paramedics Plus] prompt written notice of any audit or review of any actual or threatened claim, or any statement of fact coming to the attention of one of the parties which is likely to lead to a claim covered by the indemnity.

The Contract further provides for prompt written notification of expenses claimed by EMSA under the indemnification provision so that Paramedics Plus could comply with its duty of payment within thirty (30) days after they were incurred.

67. EMSA failed to timely comply with the Contract's notice requirements as to this action.

68. Moreover, even as of the filing of this action, EMSA has not tendered its defense of this action to Paramedics Plus, in violation of the Contract's indemnity provision.

69. Accordingly, the Court should enter a declaratory judgment providing that Paramedics Plus has no duty to indemnify, defend, and hold harmless EMSA for any liabilities, costs, and defense of this action, whether under the Contract or otherwise.

70. The Court should further enter a declaratory judgment providing that Paramedics Plus has no duty to indemnify, defend, and hold harmless Williamson for any liabilities, costs, and defense of this action, whether under the Contract or otherwise.

## CLAIM II
## (INDEMNITY)
## Against EMSA

71. Paramedics Plus incorporates by reference the allegations of Paragraphs 1 through 71 as if set forth in Claim II in full.

72. Paramedics Plus states a claim under applicable Oklahoma state and common law for equitable and implied indemnity against EMSA for the expenses incurred by Paramedics Plus in defending and settling this action.

73. As of the filing of this Crossclaim, Paramedics Plus has incurred significant expenses in defending and settling this action.

74. Paramedics Plus was without fault in the circumstances giving rise to this action. It has incurred and will incur liabilities as a result, however.

75. By virtue of the circumstances described in this Crossclaim, EMSA is jointly and severally liable to Paramedics Plus for equitable and implied indemnity for the expenses it has incurred in defending and settling this action, including attorneys' fees and costs. These amounts substantially exceed $75,000, exclusive of interest or attorneys' fees.

## CLAIM III
## (DECLARATORY JUDGMENT)
## Against EMSA

76. Paramedics Plus incorporates by reference the allegations of Paragraphs 1 through 76 as if set forth in Claim III in full.

77. Paramedics Plus states a claim for a declaratory judgment in accordance with 28 U.S.C. § 2201 for the purpose of determining questions of actual, justiciable controversy now existing between the parties.

78. By virtue of the circumstances described in this Crossclaim, the Court should enter a decree finding that EMSA is jointly and severally liable to Paramedics Plus for equitable and implied indemnity for the expenses it has incurred in defending and settling this action, including attorneys' fees and costs.

### CLAIM IV
**(Breach of the Implied Covenants of Good Faith and Fair Dealing and the Duty of Care, Skill and Reasonable Performance)**
**Against EMSA**

79. Paramedics Plus incorporates the allegations of paragraphs 1 through 79 above as if set forth in Claim IV in full.

80. Paramedics Plus states a claim under applicable state and common law for breach of the implied covenant of good faith and fair dealing and breach of the duty to perform with care, skill, reasonable experience and faithfulness against EMSA.

81. "Every contract in Oklahoma contains an implied duty of good faith and fair dealing." *Wathor v. Mut. Assur. Adm'rs, Inc.*, 2004 OK 2, ¶ 5, 87 P.3d 559, 561.

82. "Accompanying every contract is a common law duty to perform the contract with care, skill, reasonable experience and faithfulness the thing agreed to be done. A negligent failure to perform these duties is . . . a breach of contract." *Leak-Gilbert v. Fahle*, 2002 OK 66, ¶ 20, 55 P.3d 1054, 1059.

83. This Claim is asserting a breach of contract only, not a tort claim of any kind.

84. As implied by applicable state and common law, EMSA owed to Paramedics Plus a duty to deal with Paramedics Plus fairly and in good faith in connection with the performance of the Contract, including the Modifications thereto.

85. EMSA owed to Paramedics Plus a duty to perform the Contract with care, skill, reasonable experience and faithfulness, which included, without limitation, ensuring compliance

with applicable laws, rules, and regulations and ensuring that the parties' agreements fully and accurately set forth their actual relationship.

 86. EMSA and its authorized agent, Riggs Abney, breached those duties in a number of ways, including, but not limited to, by:

  a. Failing to document the parties' actual relationship after 2005 in any of the written Modifications to the Contract;

  b. Including a provision in all post-2005 Modifications to the Contract stating that the parties had no other agreements not contained in the Contract, as modified, when this was not the case;

  c. Failing to determine whether the profit-cap arrangement was lawful in accordance with the AntiKickback Statute, 42 U.S.C. § 1320a-7b(b);

  d. Failing to determine whether the profit-cap arrangement was lawful in accordance with the False Claims Act, 31 U.S.C. §§ 3729-3733 *et seq.*;

  e. Failing to advise Paramedics Plus that the profit-cap arrangement could result in violations of the AntiKickback Statute, 42 U.S.C. § 1320a-7b(b);

  f. Failing to advise Paramedics Plus that the profit-cap arrangement could result in violations of the False Claims Act, 31 U.S.C. §§ 3729-3733 *et seq.*;

  g. Submitting claims to governmental authorities which resulted in violations of the AntiKickback Statute, 42 U.S.C. § 1320a-7b(b);

  h. Submitting claims to governmental authorities which resulted in violations of the False Claims Act, 31 U.S.C. §§ 3729-3733 *et seq.*;

  i. Benefitting from monies paid by Paramedics Plus to EMSA, which EMSA (and Riggs Abney) knew or should have known violated state and federal law;

j. Failing to timely notify Paramedics Plus of its indemnity claim, and, in fact, delaying making such a claim for years, to the prejudice of Paramedics Plus;

k. Failing to tender its defense in this action to Paramedics Plus from the outset;

l. Failing to tender settlement authority in this action to Paramedics Plus; and

m. Pursuing unjustified and unreasonable strategies in defense and settlement of this action.

87. Under Oklahoma law, "[w]here a contract has several distinct objects, of which one at least is lawful and one at least is unlawful in whole or in part, the contract is void as to the latter, and valid as to the rest." 15 *Okla. Stat.* § 105.

88. EMSA's, Williamson's, and Riggs Abney's actions and omissions described in this Crossclaim constitute a breach of the implied duty of good faith and fair dealing.

89. EMSA's, Williamson's, and Riggs Abney's actions and omissions described in this Crossclaim constitute a breach of the duty to perform the Contract with care, skill, reasonable experience and faithfulness.

90. As a result of EMSA's breaches of the duty of good faith and fair dealing and the duty to perform the Contract with care, skill, reasonable experience and faithfulness, Paramedics Plus has incurred actual damages in an amount to be proved at trial, but which substantially exceeds the amount-in-controversy requirement of 28 U.S.C. § 1332. This amount includes, but is not limited to, all amounts that Paramedics Plus has paid in defense and settlement of this action and all amounts paid to EMSA or Williamson under the profit-cap arrangement.

**WHEREFORE**, Paramedics Plus, LLC, demands judgment against defendants, the Emergency Medical Services Authority and H. Stephen Williamson, as follows:

A. With respect to Count I, a declaratory judgment providing that Paramedics Plus has no duty to indemnify, defend, and hold harmless EMSA or Williamson for any liabilities, costs, and defense of this action, whether under the Contract or otherwise.

B. With respect to Count II, implied and equitable indemnity in favor of Paramedics Plus and against EMSA in an amount to be proved at trial, but which exceeds $75,000.00, exclusive of costs, interest and attorneys' fees;

C. A declaratory judgment in accordance with Claim III of this Crossclaim;

D. With respect to Count IV, a judgment for damages sustained by Paramedics Plus as a result of EMSA's (and its agents') breaches of its duties under the Contract as described therein, in an amount to be proved at trial but which exceeds $75,000.00 exclusive of costs, interest and attorneys' fees;

E. An award of all costs incurred by Paramedics Plus in bringing and prosecuting this action, including reasonable attorney's fees; and

F. All other relief to which Paramedics Plus is entitled at law or in equity.

In accordance with FED. R. CIV. P. 38(b)(1), Paramedics Plus hereby demands a jury on all matters presented by this Complaint as to which it has a right to a jury trial.

Further pleading under FED. R. CIV. P. 42(a), Paramedics Plus intends to move this Court for an order of consolidation with the pending Civil Action No. 4:14-CV-203.

Date:  March 22, 2018  			Respectfully submitted,

By: */s/ Otis Carroll*
Otis W. Carroll, Jr.
State Bar No. 03895700
Collin M. Maloney
State Bar No. 00794219
Mandy Nelson
State Bar No. 24055270
IRELAND, CARROLL & KELLEY, P.C.

6101 S. Broadway Ste. 500
Tyler, TX 75703
(903) 561.1600
otiscarroll@icklaw.com
cmaloney@icklaw.com
mnelson@icklaw.com

T. John Ward
State Bar No. 20848000
WARD, SMITH, & Hill PLLC
1127 Judson Road, Suite 220
Longview, TX 75601
(903) 757.6400
tjw@wsfirm.com

Michael C. Coker
ADAMS & COKER, P.C.
State Bar. No. 04527100
4540 Kinsey Drive
Tyler, TX 75703
(903) 581.1196
mikecoker@adams-coker.com

Scott E. Stevens
State Bar No. 00792024
David P. Henry
State Bar No. 24027015
STEVENS | HENRY
P.O. Box 3427
Longview, Texas 75606
Telephone: (903) 7536760
Fax: (903) 753-6761
scott@stevenshenry.com
david@stevenshenry.com

Kyle J. Nelson
State Bar no. 24056031
NELSON LAW FIRM
5380 Old Bullard Rd., Ste 600-187
Tyler, Texas 75703
(903) 561-8449
kyle@knelsonlaw.com

        Ryan A. Ray, OBA #22281
        (*pro hac vice* pending)
        **NORMAN WOHLGEMUTH CHANDLER JETER BARNETT & RAY, P.C.**
        2900 Mid-Continent Tower
        401 S. Boston Ave.
        Tulsa, OK 74103
        (918) 583-7571
        (918) 584-7846 (facsimile)
        rar@nwcjlaw.com